

**THE BROWN LAW FIRM**
Timothy W. Brown, Esq. (TB 1008)
 Email: timbrown108@gmail.com
127A Cove Road
Oyster Bay Cove, New York 11771
Telephone: (516) 922-5427

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM KRETOWICZ, DERIVATIVELY AND ON BEHALF OF KEYUAN PETROCHEMICALS, INC., | ) ) ) ) **CIVIL ACTION NO.** |
| Plaintiff, | ) ) |
| vs. | ) **VERIFIED SHAREHOLDER** ) **DERIVATIVE COMPLAINT FOR:** |
| CHUNFENG TAO, YUXIN XIANG, GERRY GOLDBERG, MICHAEL J. ROSENBERG, DISHEN SHEN, XIN YUE, AICHUN LI, YUSHUI HUANG, WEIFENG XUE, HENGFENG SHOU, | ) ) (1) BREACH OF FIDUCIARY DUTY ) (2) CORPORATE WASTE ) (3) GROSS MISMANAGEMENT ) ) |
| Defendants, | ) **JURY TRIAL DEMANDED** |
| And | ) |
| KEYUAN PETROCHEMICALS, INC., | ) ) |
| Nominal Defendant. | ) |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff William Kretowicz respectfully submits this Verified Shareholder Derivative Complaint against the defendants named herein based upon personal knowledge as to themselves and

1

their own actions, and as to all other matters, upon information and belief based upon the investigation of counsel.

## INTRODUCTION

1. This is a shareholder derivative action on behalf of Nominal Defendant, Keyuan Petrochemicals, Inc. ("Keyuan" or "the Company") against Defendants Chunfeng Tao, Yuxin Xiang, Gerry Goldberg, Michael J. Rosenberg, Dishen Shen, Xin Yue, Aichun Li, Yushui Huang, Weifeng Xue, and Hengfeng Shou (the "Individual Defendants") for violations of their fiduciary duties owed to Keyuan between at least April 22, 2010 to October 20, 2011 (the "Relevant Time Period"). These violations, in turn, have substantially injured the Company.

2. During the Relevant Time Period, the Individual Defendants in breach of their fiduciary duties to the Company made, approved, acquiesced, and/or turned a blind eye to numerous self-dealing related party transactions between entities owned and/or controlled by them on one hand, and the Company on the other hand.

According to the 2010 10-K released on October 20, 2011, the related party transactions made and concealed by the Individual Defendants were a significant percentage of the entire business operation. For example, Related party sales amounted to $111,860,732 in 2010 and $21,491,643 in 2009, representing 20% of the 2010 total sales, and 31% of 2009 total sales respectively. Almost all of these undisclosed related party sales were made to entities owned or controlled by defendant Chunfeng Tao and his affiliates.

3.       The related party sales to Tao were not arm's length transactions because the margins on those related sales were materially lower than other non-related party sales Keyuan made. Stated differently, Keyuan's sales to Tao were less profitable than sales it made to unrelated parties.

4.       Indeed, the Company auditor later explained that, "[i]t is possible that the terms of these transactions may not be the same as those that would result from transactions among unrelated parties."

5.       Individual Defendants also caused Keyuan to commit overt acts and crimes in connection with the undisclosed related party transactions. In the 2010 10-K, Keyuan revealed that:

> [W]e engaged with certain related and other parties in short term financings to overcome the restrictions regarding the use of certain bank loans or to satisfy the banks' internal requirements to demonstrate the usage of the loans. Though we are current on our loan payments and as a general rule, the risk of prosecution and or civil liabilities is diminished if the loans have been repaid, we are advised that such practices may have been in violation of PRC banking laws.

6.       Individual Defendants also lied to benefit the related parties. In the 2010 10-K, the Company stated in relevant part:

> In the past we sometimes accommodated requests from our customers to change the name of products so that our customers could save on freight costs.

7.       Not surprisingly, as result of Individual Defendants' breaches of fiduciary duty, the Company's stock was delisted from the NASDAQ exchange and lost more than 70% of its value, severely damaging Keyuan's ability to use the capital markets to raise fund for operations and expansion. Additionally, the Company now faces substantial liability and legal costs in connection with federal securities fraud class action litigation that has been filed against it and others based upon the same wrongdoing as alleged herein.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff William Kretowicz and Individual Defendants are citizens of difference states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

## THE PARTIES

**Plaintiff**

10. Plaintiff William Kretowicz ("Plaintiff") is, and at all times relevant hereto was, a shareholder of Keyuan. Plaintiff brings this action derivatively in the right of and for the benefit of the Company. Plaintiff will fairly and adequately represent the interests of the Company and its shareholders in enforcing the rights of the Company. Plaintiff is a citizen of the state of Massachusetts.

**Nominal Defendant**

11. Keyuan is a Nevada Corporation, headquartered in China. Keyuan through its operating subsidiaries engages in the manufacture and sale of petrochemical products in China. Until October 6, 2011, Keyuan's stock was listed on the NASDAQ exchange under ticker "KEYP." On October 6, 2011, the NASDAQ de-listed the Company's stock, and it began to trade over-the-counter on the "Pink Sheets" under ticker KEYP.PK.

**Individual Defendants – Current Directors**

12. Defendant Chunfeng Tao ("Tao"), was and is, Chairman of the Board and Chief Executive Officer of Keyuan. Tao controls approximately 34.52% of Keyuan's common stock.

13. Defend Yuxing Xiang ("Xiang"), has been a member of Board of Directors of Keyuan since September 6, 2012. He is also the chairman of the Audit Committee. Xiang is a Certified Management Accountant (Ontario, Canada) and a Certified Public Accountant (Delaware).

14. Defendant Gerry Goldberg ("Goldberg") has been a member of Board of Directors of Keyuan since July 1, 2010. He is also the chairman of the Audit Committee. Goldberg is a Licensed Public Accountant and a Member of the Institute of Chartered Accountants of Ontario, Canada.

15. Defendant Michael J. Rosenberg ("Rosenberg") has been a member of Board of Directors of Keyuan since July 1, 2010. He is also a member of the Audit Committee.

16. Defendant Dishen Shen ("Shen") has been a member of Board of Directors of Keyuan since July 1, 2010. He is also a member of the Audit Committee.

17. Defendant Xin Yue ("Yue") has been a member of Board of Directors of Keyuan since July 1, 2010.

**Individual Defendants – Former and Current Officers**

18. Defendant Aichun Li ("Li") was the Chief Financial Officer of Keyuan until her resignation from the Company on October 12, 2011. Li is a U.S. Certified Public Accountant. Li earned an MBA and an MS in Accounting from two U.S. Universities. Li previously served as a member of the CFO Group with Bank of America and consultant with Deloitte Touche LLP.

19. Defendant Yushui Huang ("Huang") is the Company Vice President of Administration. Huang was also appointed as the Company's Insider Trading Compliance Officer on July 20, 2010.

20. Defendant Weifang Xue ("Xue") was the Company Vice President of Accounting until August 2011. In the Company's SEC filings, Xue was noted as a key and essential employee of the Company. Xue was "terminated" as a result of the Company's misstated SEC filings.

21. Defendant Hengfeng Shou ("Shou") is the Company Vice President of Sales.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

22. The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to, and did, directly and indirectly, controlled (or failed to exert their controlling ability to stop) the wrongful acts complained of herein. Because of their directorial and executive positions with the Company, each of the Individual Defendants had access to adverse non-public information about the financial condition and operations of the Company, including, without limitation, the misconduct of the other Individual Defendants.

23. At all material times hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of the Company, and was at all times acting within the course and scope of said agency.

24. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial, business, and corporate affairs of the Company. By virtue of such duties, the officers and directors of the Company were required, among other things, to:

> i. Manage, conduct, supervise and direct the business affairs of the Company in accordance with the laws of the United States, the states and countries in which it conducted business, and the Company's charter and bylaws;
>
> ii. Implement and oversee in good faith, and with loyalty, adequate internal controls sufficient to monitor and prevent the officers, directors, and employees of the Company from violating or acting in contravention to applicable federal and state laws, rules and regulations, and those of the countries in which it conducts business; and
>
> iii. Refrain from using their status as directors or officers to the detriment of the Company and its shareholders.

25. Each of the Individual Defendants further owed to Keyuan the duty of loyalty requiring that each favor Keyuan's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage, which requires, *inter alia*, scrutiny of interested party transactions and rejection of such transactions which are unfair to the Company or evince corporate waste. The duty of loyalty further requires a duty of candor requiring full and candid disclosure of all facts relevant to any potential conflict of interest and said interested party transactions.

26. The Board has an Audit Committee. According to the Company's Schedule 14A filed with SEC on April 20, 2012:

> Our Audit Committee consists of Mr. Gerry Goldberg, Mr. Michael Rosenberg and Mr. Dishen Shen, each of whom is independent. The Audit Committee assists the Board of Directors oversight of the following: (i) the integrity of the our financial statements, (ii)

our compliance with legal and regulatory requirements, (iii) the independent auditor's qualifications and independence, and (iv) the performance of our internal audit function and independent auditor, and prepares the report that the Securities and Exchange Commission requires to be included in our annual proxy statement.

## SUBSTANTIVE ALLEGATIONS

27. As part of each annual audit, under Generally Accepted Auditing Standards AU 333, and 334, the Company's auditor is obligated to inquire, either orally or in writing, of each senior officer and each director as to the existence of any related party transactions with the Company.

28. As part of each annual audit, under Generally Accepted Auditing Standard AU 560, the Company's auditor is obligated to inquire of management whether the corporation has entered into any material transactions that must be listed as subsequent events in the financial statements pursuant to GAAP and SEC regulations.

29. In addition, prior to issuing an unqualified or "clean" audit opinion, an auditor will require that a Company's Chief Executive Officer and its Chief Financial officer sign a "management representation letter." These written representations are mandated as a professional standards requirement under the Statements on Auditing Standards No. 85 ("SAS 85").

30. Under SAS 85, a public company's independent auditor is required to obtain written representations from a company's senior management, normally the chief executive, as part of the audit process. (*See also* AU 333.06). These representations are contained in what is known in auditing jargon as a "management representation letter." The management representation letter should cover all periods covered by the auditor's report. Management representation letters are used to provide information to the auditors about matters that cannot be objectively tested because they