depend on management's knowledge, such as management's intentions and the completeness of information provided to the auditor.

31.     The management representation letter inquires of management whether there are any related party transactions or material subsequent events that must be disclosed in the financial statements.

32.     The management representation letter required Defendants Chunfeng Tao and Aichun Li to individually represent to the Company's independent auditor each reporting period that as of that date, among other things:

> i.     He or she has disclosed all related party transactions relevant to the Company to the auditor and that he was not aware of any other such matters required to be disclosed in the financial statements.
>
> ii.     All the accounting records have been made available to the auditor for the purpose of its audit.
>
> iii.     All the related party transactions undertaken have been properly reflected and recorded in the accounting records.
>
> iv.     All minutes of directors meetings and summaries of board actions for which minutes are not yet available have been made available to the auditor.
>
> v.     There are no material transactions that have not been properly recorded in the accounting records underlying the financial statements.
>
> vi.     All guarantees under which the company is contingently liable have been properly recorded or disclosed in the financial statements

9

vii.  The financial statements are fairly presented in conformance with Generally Accepted
Accounting Principles.

viii. The Company has no plans or intentions that may materially affect the carrying value
or classification of assets and liabilities.

33.     The last paragraph of the management representation letter required the CEO and the
CFO to state: "To the best of our knowledge and belief, no events have occurred subsequent to the
balance-sheet date of this letter that would require adjustment to or disclosure in the aforementioned
financial statements."

34.     The management representation letter thus required CEO Tao and CFO Li to disclose
to the auditor the details of the related party transactions.

35.     Likewise, in connection with every one of Keyuan's quarterly reports, Keyuan's CEO
and CFO were required to provide similarly worded management representation letters.  Statement
on Standards for Accounting and Review Services No. 9 ("SSARS") required the auditors obtain
from Tao and Li management representation letters in connection with the Company's 10-Qs filed
with the SEC during the Relevant Time Period.

36.     Tao and Li signed knowingly false management representation letters to Keyuan's
auditor prior to issuance of the financial statements in the 2009 and 2010 Form 10-K annual reports
and interim quarterly reports  during the Relevant Time Period.  Otherwise, the auditor would have
learned of and disclosed the related party transactions, as eventually occurred once the transactions
were discovered and disclosed on October 20, 2011.

**The Undisclosed Related Party Transactions**

10

37.     In Keyuan's financial statements issued during the Relevant Time Period, Keyuan failed to disclose the following related party transactions.

38.     According to Keyuan's 2010 10-K filed with the SEC on October 20, 2011, Keyuan admitted that it failed to disclose and should have disclosed the following related party sales of products in its periodic reports filed with SEC:

| Sales to Related Parties | | |
|---|---|---|
| **Related Party** | **Year ended December 31,** | |
| | 2009 | 2010 |
| Ningbo Kewei Investment Co., Ltd. ("Ningbo Kewei")[1] | $4,869,959 | -- |
| Ningbo Kunde Petrochemical Co. Ltd ("Ningbo Kunde")[2] | $14,121,663 | $101,680,459 |
| Ningbo Wanze Chemical Co., Ltd ("Ningbo Wanze")[3] | $2,500,021 | -- |
| Ningbo Zhenhai Jinchi Petroleum Chemical Controlled by Mr. Shou Co., Ltd ("Zhenhai Jinchi")[4] | -- | $10,180,273 |
| **Total Related Party Sales** | $21,491,643 | $111,860,732 |

39.     The related party sales were a material percentage of the Company's total sales.

| | **Year ended December 31,** | |
|---|---|---|
| | 2009 | 2010 |
| **Total Related Party Sales:** | $21,491,643 | $111,860,732 |
| **Total Sales** | $68,653,603 | $558,752,069 |
| **Percentage of Total Sales to Related Parties** | 31% | 20% |

40.     Keyuan also admitted in its 2010 10-K that it failed to disclose and should have disclosed the related party nature of certain other sales:

---

[1] According to the 2010 10-K, Defendant Tao controls Ningo Kewei.
[2] According to the 2010 10-K, Defendant Tao's mother was a 65% nominee shareholder of Ningbo Kunde.
[3] According to the 2010 10-K, Defendant Tao's sister-in-law is Ningbo Wanze's legal representative.
[4] According to the 2010 10-K, Hengfeng Shou, the Vice President of Ningbo Keyuan

| | Year ended December 31, | |
|---|---|---|
| | **2009** | **2010** |
| Ningbo Litong Petrochemical Co., Ltd ("Ningbo Litong")[5] | $17,922,288 | $29,625,766 |

41.     Keyuan admitted in its 2010 10-K that it failed to disclose and should have disclosed

the following purchases of raw materials from related parties:

| Purchase of Raw Material Purchases From Related Parties | | |
|---|---|---|
| | Year ended December 31, | |
| | 2009 | 2010 |
| Ningbo Kewei | $952,594 | $4,465,563 |
| Ningbo Kunde | $3,777,986 | $20,549,245 |
| **Total** | $4,730,580 | $25,014,808 |

42.     The purchases of raw material from related parties was a material amount of the

Company's raw material inventory:

| | Year ended December 31, | |
|---|---|---|
| | 2009 | 2010 |
| **Total Raw Material Purchases From Related Parties** | $4,730,580 | $25,014,808 |
| **Total Raw Materials** | $12,922,654 | $53,160,604 |
| **Percentage of Raw Materials from Related Parties** | 36% | 47% |

43.     Keyuan admitted in its 2010 10-K that it failed to disclose and should have disclosed

additional purchases of raw material due to their related party nature:

| | Year ended December 31, | |
|---|---|---|
| | 2009 | 2010 |
| Ningbo Litong | $3,280,566 | $18,994,104 |

---

Petrochemical, controls Zhenhai Jinchi.

[5] According to the 2010 10-K, Ningbo Liton is the former 12.75% nominee shareholder of Ningbo Keyuan.

44.     Keyuan admitted in its 2010 10-K that it failed to disclose and should have disclosed the amount owed by related parties:

|  | Year ended December 31, |
|  | 2010 |
| Ningbo Kunde | $5,181,809 |
| Ningbo Jiandong Jihe Construction Materials Store ("Jiandong Jihe")6 | $112,459 |

45.     Keyuan admitted in its 2010 10-K that it failed to disclose and should have disclosed additional related party transactions involving among, other things, account receivables owed to the Company by related parties, and financing transactions between related parties.

46.     Keyuan through its quarterly and restated quarterly reports it filed with the SEC on November 1, 2011, admitted that it should have disclosed the above related party transactions in its the interim 2010 and 2009 quarterly periods, when those financial statements were first issued.

47.     In Keyuan's restated 10-Q for the second quarter ended June 30, 2010 filed with the SEC on November 1, 2011, the Company admitted that it failed to disclose and should have disclosed the following related party sales and purchases of raw material from related parties:

| Sales to Related Parties | | | | |
|  | Three Months ended June 30, | | Six Months ended June 30 | |
|  | 2009 | 2010 | 2009 | 2010 |
| Ningbo Kunde | -- | $22,424,477 | -- | $43,228,614 |
| Zhenhai Jinchi | -- | $3,941,976 | -- | $3,958,248 |

| Purchases of Raw Materials from Related Parties | | | | |
|  | Three Months ended June 30, | | Six Months ended June 30 | |
|  | 2009 | 2010 | 2009 | 2010 |
| Ningbo Kewei | -- | -- | -- | $4,427,831 |
| Ningbo Kunde | -- | -- | -- | $1,308,488 |

---

[6] According to the 2010 10-K, defendant Xue's brother-in-law controls Jiangdong Jihe.

13

48.     In Keyuan's restated Form 10-Q for the third quarter ended September 30, 2010 filed

with the SEC on November 1, 2011, the Company admitted that it failed to disclose and should have

disclosed the following related party sales and purchases of raw material from related parties:

| Sales to Related Parties | | | | |
|---|---|---|---|---|
| | Three Months ended September 30, | | Nine Months ended September 30 | |
| | 2009 | 2010 | 2009 | 2010 |
| Ningbo Kunde | $7,362,101 | $35,723,405 | $7,362,101 | $79,072,843 |
| Zhenhai Jinchi | -- | $2,940,964 | -- | $6,910,274 |

| Purchases of Raw Materials from Related Parties | | | | |
|---|---|---|---|---|
| | Three Months ended September 30, | | Nine Months ended September 30 | |
| | 2009 | 2010 | 2009 | 2010 |
| Ningbo Kewei | -- | -- | -- | $4,440,207 |
| Ningbo Kunde | $2,530,203 | $14,154,723 | $2,530,203 | $15,409,928 |

**The Undisclosed Related Party Transactions Were Not Arms' Length Transactions**

49.     The undisclosed related party transactions personally benefited the identified

defendants and were not arms' length transactions.

50.     The gross profit margin on related party sales was significantly smaller than the profit

margins Keyuan realized from non-related party sales. Stated differently, dollar-for-dollar, Keyuan

was earning less profit from sales to related parties than it was from sales to non-related parties.

51.     For example, for Q3 2010 the gross profit margin on the related party sales was

11.4%, yet it was 25.2%% for the sales to non-related parties.

52.     In the Company's 2010 10-K filed with the SEC on October 20, 2010, which set forth

certain aforementioned restatement adjustments, the Company's auditor took the drastic step of

qualifying its audit opinion by explaining that:

The Company has significant transactions and relationships with related parties and certain other parties which are described in Note 24 to the consolidated financial statements. It is possible that the terms of these transactions may not be the same as those that would result from transactions among unrelated parties.

53.     The Company admitted that it committed crimes in connection with the related party

transactions. In the 2010 10-K Keyuan revealed that:

> [W]e engaged in certain related and other parties in short term financings to overcome the restrictions regarding the use of certain bank loans or to satisfy the banks' internal requirements to demonstrate the usage of the loans.  Though we are current on our loan payments and as a general rule, the risk of prosecution and or civil liabilities is diminished if the loans have been repaid, we are advised that such practices may have been in violation of PRC banking laws.

54.     Individual Defendants also lied to benefit the related parties.  In the 2010 10-K, the

Company stated in relevant part:

> In the past we sometimes accommodated requests from our customers to change the name of products so that our customers could save on freight costs.

## INDIVIDUAL DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES

55.     Each Individual Defendant, by virtue of his or her position as an officer and/or

director, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith

and the exercise of due care and diligence in the management and administration of the affairs of the

Company, as well as in the use and preservation of its property and assets. The conduct of the

Individual Defendants complained of herein involves a knowing and culpable violation of their

obligations as officers and directors of Keyuan, the absence of good faith on their part, and a reckless

disregard for their duties to the Company and its shareholders that the Individual Defendants were

aware or should have been aware posed a risk of serious injury to the Company. The conduct of the